## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

United States of America,

       Plaintiff,

v.

Miguel Rosas-Barrientos (1),

       Defendant.

Case No. 22-cr-174 (1) (NEB/ECW)

**ORDER AND**
**REPORT & RECOMMENDATION**

This matter is before the Court on Defendant Miguel Rosas-Barrientos' Motion to Suppress Evidence Obtained as a Result of Unlawful Search and Seizure (Dkt. 61) ("Motion to Suppress") and Defendant Miguel Rosas-Barrientos' Pretrial Motion to Disclose and Make Informant(s) Available for Interview (Dkt. 62). This case has been referred to the undersigned United States Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. A hearing on these Motions was held on January 13, 2023. (Dkt. 89.) Nathan Nelson, Assistant United States Attorney, appeared on behalf of the United States of America ("Government"). Jean Brandl, Assistant Federal Defender, appeared on behalf of Defendant Miguel Rosas-Barrientos, who was present at the hearing. Post-hearing briefing was completed on March 3, 2023, making the Motions ripe for a decision.

## I.     MOTION TO SUPPRESS

### A.     Factual and Procedural Background

Defendant Miguel Rosas-Barrientos ("Defendant" or "Rosas-Barrientos") is charged by Indictment with Conspiracy to Distribute Controlled Substances and Possession with Intent to Distribute Methamphetamine, all in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 846.  (Dkt. 1.)  Rosas-Barrientos seeks to suppress evidence seized as the result of a search executed pursuant to a search warrant for 29XX Bloomington Avenue, Apartment 5 in Minneapolis, Minnesota on April 12, 2022.  (Dkt. 61.)  The April 12, 2022 Application and Search Warrant at issue are attached as Defendant's Exhibit 1 to the Motion to Suppress.  (Dkt. 61-1 ("Def. Ex. 1").)

On April 12, 2022, Washington County Deputy Sheriff Paul Stenglein ("Deputy Stenglein") submitted a warrant application seeking authorization to search, in relevant part, "Miguel Angel Rosas Barrientos," an individual known to law enforcement as Parras, and the "[p]remise of 29[XX] Bloomington Av, Minneapolis, Minnesota, apartment #5 **and associated with keys** recovered from an unidentified Hispanic male that resides at this location."  (Def. Ex. 1, at 2-7 (emphasis added).)  The application included the following items for seizure:  methamphetamine and other controlled substances, as well as scales, drug paraphernalia, drug notes, primary containers and other items used for the concealment, storage, manufacture, distribution or consumption of controlled substances.  (*Id.* at 1, 5.)  The application also sought firearms, currency, and cell phones, amongst other items.  (*Id.*)

2

The search warrant application also provided the following information in support of the issuance of the search warrant:

- On March 17, 2022, an undercover investigator ("UC") and a Cooperative Source ("CS") contacted an unknown identified male, known to the UC as Perras,[1] identified during the investigation as part of a Drug Trafficking Organization ("DTO") responsible for distributing hundreds of pounds of methamphetamine in Minnesota, to set up a controlled buy of methamphetamine for $5,500. (*Id.* at 3 ¶ 2.)

- Perras communicated to the UC that he would deliver the methamphetamine to the UC in the area of 2500 E. Lake Street in Minneapolis, Minnesota. (*Id.*)

- The UC and CS arrived at the predetermined location in an unmarked police vehicle. (*Id.* at 3 ¶ 3.) Shortly after arriving in the area of 2500 E. Lake Street, the UC told Perras that he was waiting for him at this location. (*Id.* at 3 ¶ 4.)

- Surveillance officers observed two Hispanic males exit the front door to 29XX Bloomington Avenue and get into a grey 2002 Nissan Frontier pickup truck with Minnesota plate EKNXXX. (*Id.*) Surveillance identified the driver of the truck as Miguel A. Rosas-Barrientos from prior contacts and the passenger was an unknown Hispanic male, later identified by the CS as Perras. (*Id.*) Surveillance followed the Nissan Frontier to 2500 E. Lake Street where it parked near the UC vehicle. (*Id.*)

- Surveillance officers then saw Perras walk from the Nissan Frontier and meet with the UC and CS inside the UC's vehicle. (*Id.*) A short time later, surveillance officers saw Perras walk back to the Nissan Frontier. (*Id.*)

- Surveillance followed the Nissan Frontier with Minnesota Plate EKNXX back to the address of 29XX Bloomington Avenue and parked on the back lot (west side). (*Id.* at 3 ¶ 5.) Surveillance then observed Rosas-Barrientos exit the driver's seat and walk to the front door of the address. (*Id.*) Surveillance observed six mailboxes in the front of the 29XX Bloomington Avenue residence and saw Rosas-Barrientos use a key to open mailbox #5 and remove mail out of the mailbox. (*Id.*) Perras was observed using a key to open the rear door to the building and enter. (*Id.*) Rosas-Barrientos was then observed using a key to enter the front door of the building. (*Id.*)

---

[1]    As set forth below, law enforcement latter learned that Perras was co-defendant Juan Serna-Rojo ("Serna-Rojo").

- The UC told law enforcement that he gave Perras $5,500 in government funds and in return Perras gave the UC one kilo of methamphetamine. (*Id.*)

- On March 31, 2022, the UC again contacted Perras to arrange the purchase of a controlled substance. (*Id.* at 3 ¶ 6.) Perras and the UC arranged for the UC to purchase one pound of methamphetamine for $2,500 and agreed to meet at the previous 2500 E. Lake Street location. (*Id.*)

- On March 31, 2022, the UC was given government-documented buy funds of $2,500 by law enforcement to purchase a controlled substance. (*Id.* at 3 ¶ 7.)

- Surveillance observed Perras exit the address of 29XX Bloomington Avenue, who was then observed getting into the driver's seat of the vehicle with Minnesota license plate EKNXXX, the same vehicle from the March 17, 2022 controlled buy. (*Id.*)

- Surveillance followed Perras to the arranged meet location. (*Id.*) The UC was observed exiting their vehicle and going to the driver's window of Minnesota EKNXXX and then returning to the UC's vehicle. (*Id.* at 3-4 ¶ 7.) The UC advised law enforcement that they exchanged the documented buy funds for one pound of methamphetamine. (*Id.* at 4 ¶ 7.)

- On April 4, 2022, Deputy Stenglein conducted surveillance at 29XX Bloomington Avenue, during which he observed Perras exit the front door (east side) of the address and get into the front seat of the vehicle with Minnesota license plate EKNXXX and leave the area. (*Id.* at 4 ¶ 8.) A short time later, Deputy Stenglein observed Rosas-Barrientos exiting the front door of 29XX Bloomington Avenue residence and smoke a cigarette while sitting on the front step. (*Id.*)

- Approximately 20 minutes later, Perras returned to the 29XX Bloomington Avenue residence, and Deputy Stenglein observed Perras walk to the front of the residence, have a conversation with Rosas-Barrientos on the front steps of the residence, then use a key to enter the front door, after which they both entered the 29XX Bloomington Avenue apartment building. (*Id.*)

- Based on Deputy Stenglein's training, experience, and knowledge of this investigation, he knew that Perras and Rosas-Barrientos were a part of a DTO that utilizes others to store and distribute methamphetamine in Minnesota. (*Id.*) During this investigation, law enforcement has arrested and recovered large quantities of methamphetamine and other related items of evidence at apartments in Minnesota that were rented by others who did not reside there in order to conceal the location from law enforcement where large quantities of methamphetamine are being stored. (*Id.* at 4 ¶ 9.)

4

- Deputy Stenglein had been unable to independently identify the apartment associated with Perras and Rosas-Barrientos at 29XX Bloomington Avenue. (*Id.* at 4 ¶ 10.)  Additionally, the Nissan Frontier pick-up truck was registered to "Mark Schnabel" from a Champlin, Minnesota address, and the Minnesota driver's license photograph of "Mark Schnabel" did not match Perras or Rosas-Barrientos. (*Id.*)

- Based on Deputy Stenglein's training, experience, and knowledge of this investigation, it is common for members of this DTO to utilize residences that are not in their names to avoid being identified by law enforcement and to protect their drugs and proceeds.  (*Id.* at 4 ¶ 11.)

- Based on Deputy Stenglein's training and experience, it is common for individuals who traffic in controlled substances to keep quantities of controlled substances, amounts of U.S. currency, and other related items of evidence in their residences. (*Id.* at 4-5 ¶ 12.)

As part of the application, Deputy Stenglein sought the following:

> Your affiant requests to execute a search warrant on the [sic] PERRAS, Miguel A. Rosas-Barrientos . . . and the Nissan Frontier pick-up truck with Minnesota plate EKN[XXX] when PERRAS and/or MIGUEL leaves 29[XX] Bloomington Av in Minneapolis, Minnesota to search for items of evidence listed on the warrant to include apartment residential keys. After the recovery of the residential keys from PERRAS and/or MIGUEL, your affiant requests the court's permission to execute a search warrant at 29[XX] Bloomington Av, Minneapolis, Minnesota apartment #5 by inserting the recovered keys from the [sic] PERRAS and/or MIGUEL into the exterior locking devices that are marked as apartment #5 at 29[XX] Bloomington Av in Minneapolis. Your affiant requests to execute a search warrant at 29[XX] Bloomington Av at the apartment [sic] the recovered keys recovered from the [sic] PERRAS and/or MIGUEL give access to for the items of evidence listed on this warrant.

(*Id.* at 4 ¶ 11.)

On April 12, 2022, Hennepin County District Judge Hilary Caligiuri issued

a search warrant for the following:

> Miguel Angel Rosas Barrientos. . . . An unidentified male (see attached photograph in affidavit), first name and last name unknown, Know [sic] to Law Enforcement as PARRAS described as a Hispanic

male, about 30 to 35 years old, approximately [sic] height 5-7 to 5-10 and approximately 180 pounds;

Premise of 29[XX] Bloomington Av, Minneapolis, Minnesota, apartment #5 **and associated with keys recovered from an unidentified Hispanic male that resides at this location**. This multi-unit premise is described as light-colored blue exterior with green trim.

(*Id.* at 8 (emphasis added).)

At the January 13, 2023 hearing, Deputy Christian Freichels, with the Ramsey County Sheriff's Office (also serving as a Task Force Officer with the Drug Enforcement Administration) testified that on April 11, 2022, he received information from an informant previously recruited by law enforcement that Serna-Rojo was driving somewhere to pick up a large amount of drugs, and then later the informant learned that Serna-Rojo was driving to Chicago, Illinois, to pick up a large quantity of cocaine. (January 13, 2023 Hearing Transcript (Dkt. 101) ("R.") at 37.)  Deputy Freichels was able to corroborate the information from the informant by tracking the GPS location of Serna-Rojo's cellphone via a search warrant issued by a court.  (R. 37-38.)  Law enforcement tracked Serna-Rojo to Chicago and coming back towards Minnesota.  (R. 38-39.)  Law enforcement surveillance was established, along with the GPS monitoring on the vehicle, in Wisconsin going into Minnesota (with short visual gaps in surveillance).  (R. 38-42.)  Deputy Freichels asked Minnesota State Trooper Anthony Mains to conduct a stop of the vehicle once it crossed into Minnesota, and Trooper Mains made a stop of the vehicle on Highway 94.  (R. 40-42.)  Law enforcement identified Perras as co-defendant Serna-Rojo during the traffic stop when he was arrested on April

12, 2022.  (R. 32.)  Among the items taken into custody from the traffic stop was a set of keys that had been recovered from Serna-Rojo.  (R. 42.)

Deputy Freichels brought the keys recovered from Serna-Rojo to the 29XX Bloomington Avenue address and gave the keys to another investigator who used them on Apartment 5, and one or more of those keys did in fact open the door to Apartment 5.  (R. 43.)  Serna-Rojo told officers that he lived at 29XX Bloomington Avenue address in Apartment 1, and indeed one of the recovered keys also opened that apartment.  (R. 46-47.)  There were at least five apartments at the address.  (R. 47.)

As part of the search of Apartment 5, officers found and seized suspected methamphetamine, a Kahr .40 caliber handgun, s/n FESS5692 with a loaded magazine, ammunition, cellular phones, a digital scale, Rosas-Barrientos's passport, and $4,084 in cash.  (Def. Ex. 1 at 11.)

**B.    Legal Standard**

The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV.

A search warrant is valid under the Fourth Amendment when supported by probable cause.  *United States v. Gabrio*, 295 F.3d 880, 882 (8th Cir. 2002).  Probable cause "exists when a 'practical, common-sense' inquiry that considers the totality of the circumstances set forth in the information before the issuing judge yields a 'fair

probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Stevens*, 530 F.3d 714, 718 (8th Cir. 2008) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)).  As to what this Court should consider when reviewing a search warrant for probable cause, "[w]hen the [issuing judge] relied solely on the affidavit presented to him, 'only that information which is found within the four corners of the affidavit may be considered in determining the existence of probable cause.'"  *United States v. Solomon*, 432 F.3d 824, 827 (8th Cir. 2005) (citing *United States v. Etheridge*, 165 F.3d 655, 656 (8th Cir. 1999), quoting *United States v. Gladney*, 48 F.3d 309, 312 (8th Cir. 1995)); *United States v. Smith*, 581 F.3d 692, 694 (8th Cir. 2009) (quoting *United States v. Reivich*, 793 F.2d 957, 959 (8th Cir. 1986)).  An affidavit provides "probable cause for a warrant if it 'sets forth sufficient facts to establish that there is a fair probability that contraband or evidence of criminal activity will be found in the particular place to be searched.'"  *United States v. Mutschelknaus*, 592 F.3d 826, 828 (8th Cir. 2010) (quoting *United States v. Snyder*, 511 F.3d 813, 817 (8th Cir. 2008)).

Probable cause is a fluid concept that focuses on 'the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'"  *United States v. Colbert*, 605 F.3d 573, 576 (8th Cir. 2010) (quoting *Gates*, 462 U.S. at 231).  "An issuing judge's 'determination of probable cause should be paid great deference by reviewing courts' and should be upheld if the judge had a 'substantial basis for concluding that a search would uncover evidence of wrongdoing.'"  *United States v. Stevens*, 530 F.3d 714, 718 (8th Cir. 2008) (quoting *Gates*, 462 U.S. at 236) (cleaned up).

The proponent of a suppression motion on the basis of a Fourth Amendment violation bears "the burden of establishing that his . . . Fourth Amendment rights were violated by the challenged search or seizure." *Rakas v. Illinois*, 439 U.S. 128, 130 n.1 (1978).

## C.   Analysis

Rosas-Barrientos argues that Deputy Stenglein offered no information in his supporting affidavit supporting the conclusion that Rosas-Barrientos was involved in drug sales or that there was a link between the DTO and Apartment 5, so as to warrant probable cause for the purposes of issuing the search warrant for the apartment. (Dkt. 100 at 7-12.) Rosas-Barrientos also contends that the good-faith exception as articulated in *United States v. Leon*, 468 U.S. 897 (1984), does not apply here because the application for the warrant is lacking in indicia of probable cause and is so facially deficient that the officers could not have presumed it to be valid. (Dkt. 100 at 13-17.) The Court addresses these arguments in turn.

### 1.   Probable Cause as to the Search Warrant for Apartment 5

With respect to probable cause, Rosas-Barrientos argues that assertions in the supporting affidavit that he drove Serna-Rojo to and from a drug deal, without evidence linking Rosas-Barrientos to the actions of Serna-Rojo or to any DTO, other than his mere association with Serna-Rojo, does not suffice for probable cause to search Apartment 5. (*Id.* at 11-12.) In other words, Defendant argues that the "application contains only speculation that Mr. Rosas-Barrientos was storing contraband in apartment #5 and Deputy Stenglein bases this speculation on Mr. Rosas-Barrientos' bare association with

Mr. Serna-Rojo." (*Id.* at 10.)  In conjunction with his *Leon* arguments, Rosas-Barrientos also argues that the warrant application relies on generic statements about Deputy Stenglein's training and experience and is not supported by any facts linking Rosas-Barrientos to the DTO and that the application for the warrant offers no evidence that Serna-Rojo lived at Apartment 5 or that any criminal activity was linked to that apartment. (*Id.* at 15-16.)

The Government counters, in part, that there was a substantial basis for the issuing judge to find probable cause existed to search Apartment 5 based on the statements in the affidavit that Rosas Barrientos and his co-defendant Serna-Rojo had delivered a kilogram of methamphetamine to a UC on March 17, 2022, and were observed coming directly from the apartment building at 29XX Bloomington Avenue, and returning to the building following the deal with the $5,500 in buy funds. (Dkt. 108 at 7.)

The Court finds that there was sufficient probable cause that evidence of narcotics trafficking would be found in Apartment 5.  The Eighth Circuit has repeatedly held that there is a connection between illegal activity and the suspect residence where law enforcement observed a suspected drug distributor return to a residence directly after engaging in a controlled buy with a police informant.  *See United States v. Mayweather*, 993 F.3d 1035, 1042 (8th Cir. 2021), *reh'g denied* (May 19, 2021); *see also United States v. El-Alamin*, 574 F.3d 915, 924 (8th Cir. 2009).  Here, after the initial controlled buy was arranged; law enforcement observed Rosas-Barrientos and Serna-Rojo leave the 29XX Bloomington Avenue; travel together in a vehicle to the prearranged meet location, where Serna-Rojo sold a kilo of methamphetamine for $5,500; drive directly back to

29XX Bloomington Avenue, where Rosas-Barrientos used a key to open the mailbox for Apartment 5 and remove the mail; and each separately use a key to enter the apartment building at the address. Thus, both individuals were linked to drug trafficking activity, the 29XX Bloomington Avenue address, and at least Rosas-Barrientos was linked to Apartment 5.

This is not the only drug activity linked to the residence. Rosas-Barrientos focuses on the nexus between him and the narcotics activity. (Dkt 100 at 11.) However, the Eighth Circuit only requires "a 'nexus' between the evidence to be seized **and the place to be searched**, considering 'the nature of the crime and the reasonable, logical likelihood of finding useful evidence.'" *United States v. Smith*, 21 F.4th 510, 515 (8th Cir. 2021) (quoting *United States v. Johnson*, 848 F.3d 872, 878 (8th Cir. 2017)) (citation omitted) (emphasis added). Here, the supporting affidavit also contains information that on March 31, 2022, Serna-Rojo drove the same vehicle that was used for the first controlled buy to conduct another controlled buy of methamphetamine with the same UC, during which Serna-Rojo was observed coming directly from the 29XX Bloomington Avenue apartments.[2] (Def. Ex. 1 at 3-4 ¶ 7.) Moreover, Deputy Stenglein asserted in his affidavit that based on his training and experience, it is common for individuals who traffic in controlled substances to keep quantities of controlled substances, amounts of

---

[2]     In addition, the affidavit contains additional evidence of Rosas-Barrientos and Serna-Rojo's connection to the 29XX Bloomington Avenue apartments by virtue of surveillance showing them exiting and entering the apartments on April 4, 2022. (*Id.* at 4 ¶ 8.)

U.S. currency and other related items of evidence in their residences.[3]  (Def. Ex. 1 at 4-5 ¶ 12.)

Rosas-Barrientos also argues, as set forth above, that outside of him using a key to open the mailbox for Apartment 5 and then taking the mail inside the apartment building after the first controlled buy, there is nothing in the affidavit connecting Apartment 5 to the drug trafficking observed by surveillance.  (Dkt. 100 at 17.)  He points to the assertion in the supporting affidavit that Deputy Stenglein has "attempted to identify the apartment associated with Perras and Miguel…without success."  (Dkt. 100 at 17.)  But this argument ignores the subsequent assertion by Deputy Stenglein that in his training and experience, it is common for members of this DTO to utilize residences that are not in their names to avoid being identified by law enforcement and to protect their drugs and proceeds.  (Def. Ex. 1 at 4 ¶ 11.)  Moreover, it ignores the fact that the search warrant with respect to Apartment 5 was contingent on whether keys taken directly from Rosas-Barrientos or Serna-Rojo opened the lock to Apartment 5.  (*Id.* at 8.)  Rosas-Barrientos does not challenge the seizure of the keys from Serna-Rojo or the fact that one of the

---

[3]     The Court notes that the Eighth Circuit "ha[s] not adopted a per se rule to the effect that probable cause to arrest a drug trafficker establishes an inference that records, paraphernalia, and other evidence of drug trafficking exists at the trafficker's residence." *United States v. Ross*, 487 F.3d 1120, 1123 (8th Cir. 2007).  However, the Eighth Circuit has "found probable cause to exist in cases in which officers have stated that in their experience such an inference is appropriate and in which a supporting affidavit also described a defendant's continuous course of drug trafficking activity." *Id.*  Further, as the Eighth Circuit noted, several other U.S. courts of appeals "have used language that comes even closer to a per se inference." *Id.* (citing cases).

keys opened the door to Apartment 5.  A judge may issue an anticipatory search warrant, which requires the judge "to determine (1) that it is now probable that (2) contraband, evidence of a crime, or a fugitive will be on the described premises (3) when the warrant is executed." *United States v. Brown*, 929 F.3d 1030, 1037 (8th Cir. 2019) (quoting *United States v. Grubbs*, 547 U.S. 90, 96 (2006)), *cert. denied*, 140 S. Ct. 830 (2020). "Most anticipatory warrants subject their execution to some condition precedent other than the mere passage of time—a so-called 'triggering condition.'" *Grubbs*, 547 U.S. at 94.  There was a sufficient connection of Rosas-Barrientos and Serna-Rojo to narcotics trafficking, and the 29XX Bloomington Avenue apartments.  The fact that the keys seized from Serna-Rojo ultimately opened the door to Apartment 5 gave additional supporting information so as to find sufficient probable cause existed for the execution of the search warrant at Apartment 5 for narcotics.  The fact that Serna-Rojo told officers that he lived in Apartment 1 and that one of the keys worked for the lock on that apartment, does not change the fact that one of the keys from him also opened Apartment 5.

The totality of the facts set forth in the affidavit, along with access to Apartment 5 via the keys seized from Serna-Rojo, sufficiently establishes that there was a fair probability that contraband or evidence of criminal activity would be found in Apartment 5 at the time of the execution of the search warrant.  For all of these reasons, based on the totality of the circumstances, the Court concludes that probable cause supports the search warrant for Apartment 5 at 29XX Bloomington Avenue.

### 2.    *Leon* Exception

Because the search warrants were supported by probable cause, the Court need not determine whether the *Leon* good-faith exception should apply.  However, even if the warrant lacked probable cause, the Court finds that the officers' reliance on the warrant would have been reasonable under *Leon*.

> Under the [*Leon*] good-faith exception, evidence seized pursuant to a search warrant that lacked probable cause is admissible if the executing officer's good-faith reliance on the warrant is objectively reasonable.  The good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the [issuing judge's] authorization.

*United States v. Perry*, 531 F.3d 662, 665 (8th Cir. 2008) (alterations in original) (internal quotations omitted).

*Leon* identified four situations in which an officer's reliance on a warrant would be unreasonable: (1) when the affidavit or testimony supporting the warrant contained a false statement made knowingly and intentionally or with reckless disregard for its truth, thus misleading the issuing judge; (2) when the issuing judge wholly abandoned his judicial role in issuing the warrant; (3) when the affidavit in support of the warrant is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) when the warrant is so facially deficient that no police officer could reasonably presume the warrant to be valid.  *Id.* (citation omitted).  With respect to the third exception, the Eighth Circuit explained: "'Entirely unreasonable' is not a phrase often used by the Supreme Court, and we find nothing in *Leon* or in the Court's subsequent opinions that would justify our dilution of the Court's particularly strong

choice of words." *United States v. Proell*, 485 F.3d 427, 432 (8th Cir. 2007) (quoting *United States v. Carpenter*, 341 F.3d 666, 670 (8th Cir. 2003)).

Rosas-Barrientos does not argue that the applications at issue were intentionally or recklessly misleading, or that the issuing judge wholly abandoned his judicial role in issuing the search warrant.  As stated previously, Rosas-Barrientos asserts that the *Leon* good-faith exception does not apply to the warrant because the affidavit so lacked probable cause as to render official belief in its existence entirely unreasonable and the warrant was so facially deficient that the executing officer could not have reasonably presumed its validity.  However, the Court rejects this assertion as it has already concluded that the warrant was supported by sufficient probable cause.  Moreover, the Eighth Circuit has found the *Leon* good-faith exception applies under circumstances similar to those present here, including when a warrant was supported by an affidavit describing a continuing course of drug trafficking and the affiant's statement, based on training and experience, that drug traffickers store contraband and evidence of drug trafficking at their residences.  *See*, *e.g.*, *United States v. Ross*, 487 F.3d 1120, 1122-23 (8th Cir. 2007) (finding *Leon* applied where affidavit described continuing course of drug activity, affidavit stated that officer's experience made it appropriate to infer that evidence would be found at residence, and truck used for drug trafficking was present at residence).  Indeed, the Eighth Circuit has applied *Leon* "even though the affidavit did not present facts to indicate the existence of a nexus between [a] residence and the suspected contraband" because:

> As a matter of common sense, it is logical to infer that someone in possession of valuable contraband would store that contraband in a safe, accessible location such as his or her residence. Given the common sense appeal of this inference, and its acceptance by the issuing magistrate [judge], it was not entirely unreasonable for Officer Shoemaker to believe the inference to be permissible.

*United States v. Carpenter*, 341 F.3d 666, 671-72 (8th Cir. 2003).

Therefore, based on all the facts and circumstances of this case, it was not "entirely unreasonable" for law enforcement officers to rely on the issuance of the anticipatory search warrant coupled with the fact that the keys seized from Serna-Rojo opened the door to Apartment 5.

For all of the reasons stated above, the Motion to Suppress should be denied.

## II.   MOTION FOR DISCLOSURE OF INFORMANTS

Rosas-Barrientos moves the Court for an order requiring the Government to disclose the identity of an informant who was present at the alleged drug transaction on May 12, 2021 with Deputy Stenglein and another law enforcement officer, to make the informant available to the Defendant to interview, and to provide impeachment evidence under *Giglio v. United States*, 405 U.S. 150 (1972).  (Dkt. 62 at 1-3.)

The Government does not object to providing Defendant with the identity of this confidential informant, but seeks to make its identification no earlier than three weeks prior to trial, and also states that it will voluntarily produce Jencks Act and *Giglio* material as to this informant, if called as a witness at trial, no later than three business days before trial, provided Defendant agrees to do the same.  (Dkt. 79 at 7-9.)

16

The Government has a general, although not absolute, "privilege to withhold the disclosure of the identity of a confidential informant." *Carpenter v. Lock*, 257 F.3d 775, 779 (8th Cir. 2001) (citing *Roviaro v. United States*, 353 U.S. 53 (1957)).  When deciding whether to disclose information about an informant, the court must balance "the public interest in protecting the flow of information against the individual's right to prepare his defense." *Roviaro*, 353 U.S. at 62.  "Where the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way." *Id.* at 60-61.  The essential consideration when deciding whether evidence is relevant and helpful to the defense is "whether or not the evidence is material to the accused's defense or a fair determination of the cause." *United States v. Barnes*, 486 F.2d 776, 778 (8th Cir. 1973); *see also Carpenter*, 257 F.3d at 779 ("[T]he threshold issue is whether the informant is a material witness.") (citation omitted).

"Where the witness is an active participant or witness to the offense charged, disclosure will almost always be material to the accused's defense." *Devose v. Norris*, 53 F.3d 201, 206 (8th Cir. 1995) (citation and footnote omitted); *see also United States v. Foster*, 815 F.2d 1200, 1203 (8th Cir. 1987) (citation omitted) ("The disclosure of an informant who was an active participant in the crime the accused is charged with is generally required.").  This is in contrast to "cases involving 'tipsters' who merely convey information to the government but neither witness nor participate in the offense, disclosure is generally not material to the outcome of the case and is therefore not required." *United States v. Harrington*, 951 F.2d 876, 878 (8th Cir. 1991) (citing *United*

*States v. Bourbon*, 819 F.2d 856, 860 (8th Cir. 1987)); *see also United States v. Lapsley*, 334 F.3d 762, 764 (8th Cir. 2003) ("Consequently, disclosure is typically not required when the informant merely conveys information to the government but neither witnesses nor participates in the offense.") (marks and citations omitted).

Here, there is no dispute that the confidential informant that was allegedly involved with a controlled buy on May 12, 2021 is relevant to the conspiracy to distribute narcotics allegations against Rosas-Barrientos. As such, the Government will be required to identify the confidential informant who was present at the alleged drug transaction on May 12, 2021 at least three weeks prior to the commencement of trial.

As for Rosas-Barrientos' request that the Government make the informant available for an interview, the Government's disclosure obligation with respect to confidential informants is generally satisfied when it provides a defendant with information pertaining to an informant's identity and location so that the defendant may contact the informant and request an interview or subpoena his or her testimony at trial. *See United States v. Padilla*, 869 F.2d 372, 376-77 (8th Cir. 1989). If the Government has particular concerns about protecting the informant or is aware that the Defendant may encounter difficulty in locating the informant, then it should produce the informant to Defendant to interview in lieu of providing his or her address to Defendant. *Id.* That said, whether the Government provides the name and address of the confidential informant to Defendant or produces them for interview, the informant always has the right to decline to be interviewed and the Government has no obligation to "encourage" the informant to speak to Defendant. *See United States v. Bittner*, 728 F.2d 1038, 1041-

42 (8th Cir. 1984) (finding no impermissible conduct by a Government agent when he advised a witness of her right to decline interviews with defendant's attorney).

Further, although Rosas-Barrientos only specifically identified the informant present at the May 12, 2021 transaction in his Motion, he seeks an order compelling the identification of "any informant, informants or Sources of Information utilized by the Government in the investigation of the above-entitled matter." (Dkt. 62 at 1.) The Government acknowledges that "[t]his case does involve some cooperating individuals who were percipient witnesses to matters relevant to the charges in the Indictment," and identifies (in addition to the informant present at the May 12, 2021 transaction) a confidential source who introduced the UC to Serna-Rojo and completed the controlled purchase on March 17, 2022, as well as provided police with information that Serna-Rojo was travelling to Chicago to pick up a large quantity of cocaine, which ultimately led to a traffic stop of Serna-Rojo and another individual and discovery of two kilograms of cocaine. (Dkt. 79 at 7.) The Government does not object to providing Defendant with the identity of this informant on the same terms as those proposed for the confidential informant who witnessed the May 12, 2021 transaction, along with Jencks and *Giglio* material on the same terms. (*Id.*) The Court orders the Government to identify the confidential informant who introduced the UC to Serna-Rojo and completed the controlled purchase on March 17, 2022 and provided police with information about Serna-Rojo's trip to Chicago, within at least three weeks of trial.

To the extent Defendant seeks the identification of any other informant, informants or Sources of Information utilized by the Government in the investigation of

the above-entitled matter, Rosas-Barrientos has not made a sufficient showing of materiality at this time, and the Motion is denied without prejudice. The remainder of Defendant's motion relating to the disclosure of and access to confidential informants is otherwise denied.

However, the Court reminds the Government of its obligations under *Giglio* and the Jencks Act, as set forth in this Court's January 17, 2023 Order (Dkt. 90).

### III.   ORDER

Based on the files, records, and proceedings herein, **IT IS ORDERED THAT:** Defendant Miguel Rosas-Barrientos' Pretrial Motion to Disclose and Make Informant(s) Available for Interview (Dkt. 62) is **GRANTED** in part and **DENIED** in part as set forth above.

### IV.   REPORT AND RECOMMENDATION

Based on the files, records, and proceedings herein, **IT IS RECOMMENDED THAT:** Defendant Miguel Rosas-Barrientos' Motion to Suppress Evidence Obtained as a Result of Unlawful Search and Seizure (Dkt. 61) be **DENIED**.


DATED: April 3, 2023                           *s/Elizabeth Cowan Wright*
                                                ELIZABETH COWAN WRIGHT
                                                United States Magistrate Judge

**<u>NOTICE</u>**

This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under District of Minnesota Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. D. Minn. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in D. Minn. LR 72.2(c).