UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 22-CR-174-1 (NEB/ECW) |
| Plaintiff, | |
| v. | ORDER ON REPORT AND RECOMMENDATION |
| MIGUEL ANGEL ROSAS-BARRIENTOS, | |
| Defendant. | |

This matter is before the Court on Defendant Miguel Angel Rosas-Barrientos' objection to the April 3, 2023 Report and Recommendation ("R&R") of United States Magistrate Judge Elizabeth Cowan Wright. Judge Wright recommends denying Rosas-Barrientos' motion to suppress. The disputed evidence was found in an apartment unit when officers executed a search warrant authorized by a Hennepin County judge. After a *de novo* review, the Court overrules the objection and accepts the R&R.

BACKGROUND

Rosas-Barrientos is charged with conspiracy to distribute methamphetamine in violation of 21 U.S.C. Sections 841(a)(1), 841(b)(1)(A), and 846. (ECF No. 1.) The R&R details the facts and procedural history of this case, (ECF No. 114 ("R&R") at 2–7), which

are undisputed. The Court incorporates the R&R's summary and repeats only the facts necessary for context.[1]

On April 12, 2022, Washington County Sherriff Deputy Paul Stenglein submitted a warrant application to the Hennepin County District Court. (R&R at 2; *see generally* ECF No. 61-1.) Deputy Stenglein requested authorization to search Rosas-Barrientos, his co-defendant Juan Gabriel Serna-Rojo,[2] and "29[XX] Bloomington Av, Minneapolis, Minnesota, apartment #5 and associated with keys recovered from an unidentified Hispanic male that resides at this location." (ECF No. 61-1 at 2.)

In support of the warrant application, Deputy Stenglein attested in an affidavit that he had identified Serna-Rojo as part of a drug-trafficking organization responsible for distributing hundreds of pounds of methamphetamine into Minnesota, although the officer did not explain how he knew of Serna-Rojo's connection to the organization. (*Id.* at 3.) As part of the investigation into the organization, an undercover investigator and cooperative source contacted Serna-Rojo at a Mexican phone number. (*Id.*) Serna-Rojo offered to sell the undercover investigator one kilogram of methamphetamine for $5,500. He also offered to sell multiple additional pounds of methamphetamine at a reduced rate.

---

[1] When the Court cites the R&R, it incorporates the citations it contains.

[2] At the time of the search-warrant application, Serna-Rojo's identity was unknown to law enforcement, referring to him as "PARRAS" or "PERRAS." (ECF No. 61-1 *passim*.) Officers later discovered his name to be Serna-Rojo. (*See* R&R at 3 n.1.)

(*Id.*) The undercover investigator agreed to the $5,500 purchase. (*Id.*) Serna-Rojo said that he would meet the undercover investigator on East Lake Street in Minneapolis. (*Id.*)

The undercover investigator and cooperative source went to the East Lake Street location and told Serna-Rojo they were waiting. (*Id.*) Surveillance officers observed Serna-Rojo leave 29XX Bloomington Avenue with Rosas-Barrientos. (*Id.*) They got into a Nissan Frontier truck registered to a third party, and Rosas-Barrientos drove Serna-Rojo to the meeting spot. (*Id.* at 3–4.) Serna-Rojo met with the officer inside the officer's vehicle, where he sold him a kilogram of methamphetamine. (*Id.* at 3.) After the buy, Serna-Rojo returned to the truck, and Rosas-Barrientos drove Serna-Rojo back to 29XX Bloomington Avenue. (*Id.*) Key to the motion at issue, when Rosas-Barrientos and Serna-Rojo arrived, surveillance officers observed Rosas-Barrientos use a key to open mailbox #5 at the apartment complex. (*Id.*) The officers then saw Serna-Rojo use a key to open the rear door of the building and enter it. (*Id.*) They also saw Rosas-Barrientos use a key to open the front door and enter the building. (*Id.*)

A couple of weeks later, law enforcement observed Serna-Rojo drive himself from 29XX Bloomington Avenue to another controlled drug sale in the same Nissan Frontier truck as before. (*Id.* at 3–4.) And several days after that second sale, Deputy Stenglein conducted surveillance at 29XX Bloomington Avenue and observed Serna-Rojo leave the building and drive away in the Nissan Frontier. (*Id.* at 4.) When he returned about 20 minutes later, officers saw Rosas-Barrientos and Serna-Rojo have a short conversation on

3

the front steps of the apartment complex before Serna-Rojo used a key to enter the front door. The co-defendants went inside together. (*Id.*) Deputy Stenglein tried to identify which apartment units at 29XX Bloomington Avenue belonged to Serna-Rojo and Rosas-Barrientos, but he could not do so because no unit was registered in either of their names. (*Id.*)

At the time of the warrant application, Deputy Stenglein had 17 years of law enforcement experience, including six years working narcotics investigations. (*Id.* at 2.) He led many state and federal investigations into the distribution of controlled substances, and he was assigned as a Task Force Officer with the United States Drug Enforcement Agency. (*Id.*) Based on his training, experience, and knowledge of that investigation, Deputy Stenglein attested that it is common for members of this organization to use residences and vehicles that are not in their names to avoid being caught. (*Id.* at 4.) He also stated that it is common for individuals trafficking in controlled substances to keep quantities of those substances, money, and other evidence in their residences and vehicles. (*Id.* at 4–5.)

Deputy Stenglein requested authorization to search Serna-Rojo, Rosas-Barrientos, and the Nissan Frontier pickup truck to look in part for a key to Apartment #5, as well as to search Apartment #5 itself. (*Id.* at 2, 4.) The application stated that if found, officers would use the key to search the unit:

> Your affiant requests to execute a search warrant on [Serna-Rojo], Miguel A. Rosas-Barrientos . . . and the Nissan Frontier pick-up truck . . . when

4

> [Serna-Rojo] and/or MIGUEL leaves 29[XX] Bloomington Av in Minneapolis, Minnesota to search for items of evidence listed on the warrant to include apartment residential keys. After the recovery of residential keys from [Serna-Rojo] and/or MIGUEL, your affiant requests the court's permission to execute a search warrant at 29[XX] Bloomington Av, Minneapolis, Minnesota apartment #5 by inserting the recovered keys from [Serna-Rojo] and/or MIGUEL into the exterior locking devices that are marked as apartment #5 at 29[XX] Bloomington Av in Minneapolis.

(*Id.* at 4.) As for the items to be seized, the warrant application listed methamphetamine and all other controlled substances, money, weapons, as well as scales and other drug paraphernalia, among other items. (*Id.* at 5–6.)

Hennepin County District Judge Hilary Caligiuri approved the search-warrant application on April 12. (*Id.* at 10; R&R at 5–6.) That day, law enforcement arrested Serna-Rojo as he drove back to Minneapolis from a suspected drug buy in Chicago, and among the items taken into custody during that traffic stop was a set of keys. (R&R at 6–7.) Serna-Rojo told officers that he lived in Apartment #1 at 29XX Bloomington Avenue. (*Id.* at 7.) One of Serna-Rojo's keys opened that unit. (*Id.*) Officers used another one of his keys to open Apartment #5. (*Id.*) During the officers' search of Apartment #5, they found methamphetamine, a loaded handgun, ammunition, cell phones, a digital scale, Rosas-Barrientos' passport, and $4,084 in cash. (*Id.*) It is the lawfulness of this search that Rosas-Barrientos contests in his motion to suppress.

Rosas-Barrientos argues that law enforcement did not have probable cause to search the unit, Judge Caligiuri wrongly authorized the search, and the *Leon*[3] good-faith exception to the Fourth Amendment's warrant requirement does not apply. (*See generally* ECF No. 100.) The R&R concluded that there was probable cause for the search, and even if not, law enforcement had a good-faith basis under *Leon* to rely on the issuing judge's approval of the warrant application. (*See generally* ECF No. 114.) Rosas-Barrientos objects. (ECF No. 133 ("Obj.").)

## ANALYSIS

"The proponent of a motion to suppress has the burden of establishing that his own Fourth Amendment rights were violated by the challenged search or seizure." *Rakas v. Illinois*, 439 U.S. 128, 130 n.1 (1978). A valid search warrant must be supported by probable cause. U.S. Const. amend. IV; *see also United States v. Gabrio*, 295 F.3d 880, 882 (8th Cir. 2002). "Probable cause exists when a practical, common-sense inquiry that considers the totality of the circumstances set forth in the information before the issuing judge yields a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Stevens*, 530 F.3d 714, 718 (8th Cir. 2008) (quotation marks and citation omitted).

"When the issuing judge relied solely upon [a] supporting affidavit to issue the warrant," as here, "only that information which is found within the four corners of the

---

[3] *United States v. Leon*, 468 U.S. 897 (1984).

6

affidavit may be considered in determining the existence of probable cause." *United States v. Solomon*, 432 F.3d 824, 827 (8th Cir. 2005) (cleaned up, citation omitted). "The affidavit should be examined under a common sense approach and not in a hypertechnical fashion." *Id.* (quotation marks and citation omitted). Reviewing courts must accord "great deference" to the issuing judge's probable-cause determination. *Id.* (citing *Leon*, 468 U.S. at 914). And reviewing courts must recognize that issuing judges are entitled to "draw reasonable inferences . . . in determining whether probable cause exists." *United States v. Wallace*, 550 F.3d 729, 732 (8th Cir. 2008) (citation omitted).

The Court reviews the portions of the R&R to which Rosas-Barrientos objects *de novo*. 28 U.S.C. § 636(b)(1); Fed. R. Crim. P. 59(b)(3); D. Minn. LR 72.2(b)(3). Rosas-Barrientos makes four objections. First, he argues that the R&R wrongly concluded that there was evidence linking him to drug trafficking. Relatedly, second, he contends that no evidence linked Apartment #5 to drug trafficking. Third, he asserts that the triggering condition in the anticipatory warrant—recovering keys to Apartment #5 from either defendant—was not supported by probable cause. Fourth, Rosas-Barrientos presses that the R&R incorrectly applied the *Leon* good-faith exception.

### I.     Evidence Linking Drug Trafficking to Rosas-Barrientos

Rosas-Barrientos insists that the R&R wrongly connected him to the drug-trafficking activity. He argues that "there is no evidence he knew Serna-Rojo was delivering drugs or receiving illicit money." (Obj. at 6.) The Court agrees with the

7

government that this first objection is legally irrelevant. The issue is whether there was a nexus between "the evidence being sought in the warrant application" and the "place to be searched." *United States v. Keele*, 589 F.3d 940, 943 (8th Cir. 2009) (citation omitted). The "place to be searched" is Apartment #5, not Rosas-Barrientos. Setting aside whether Rosas-Barrientos knew that Serna-Rojo selling was drugs when he drove him to the controlled buy, law enforcement had probable cause to believe that evidence of Serna-Rojo's drug dealing would be in Apartment #5. Rosas-Barrientos does not dispute that Serna-Rojo was dealing drugs, and officers found keys to Apartment #5 on Serna-Rojo. That alone connects drug trafficking to the unit.

In any event, it is reasonable to infer that Rosas-Barrientos knew about Serna-Rojo's drug dealing, at least for purposes of establishing probable cause. Rosas-Barrientos drove Serna-Rojo to and from a controlled drug sale. "[A] car passenger . . . will often be engaged in a common enterprise with the driver, and have the same interesting in concealing the fruits or the evidence of their wrongdoing," because "drug dealing [is] an enterprise to which a dealer would be unlikely to admit an innocent person with the potential to furnish evidence against him." *Maryland v. Pringle*, 540 U.S. 366, 373 (2003) (citation omitted). Given that Serna-Rojo could have driven himself to the drug sale at East Lake Street, as he did a couple of weeks later for a separate sale, it is reasonable to infer that he would not have asked an innocent third-party to take him there.

8

## II.   Evidence Linking Drug Trafficking to Apartment #5

Rosas-Barrientos' second objection is that the R&R wrongly concluded that there was a connection between Apartment #5 and illegal activity. This objection is belied by the record: the totality of the facts in Deputy Stenglein's warrant application established probable cause to search the unit for evidence of drug-related crimes.

Several facts frame the Court's conclusion. First, officers saw Rosas-Barrientos leave with Serna-Rojo from 29XX Bloomington Avenue, and then drive Serna-Rojo to the meeting spot where Serna-Rojo agreed to sell methamphetamine to undercover officers. That suggests that the methamphetamine sold by Serna-Rojo came from somewhere inside the apartment complex. Second, after the controlled buy, Rosas-Barrientos drove Serna-Rojo back to 29XX Bloomington Avenue. That suggests that the illicit money Serna-Rojo received would also be somewhere inside the apartment complex. Third, once Rosas-Barrientos and Serna-Rojo arrived at the complex, law enforcement observed Rosas-Barrientos use a key to unlock the mailbox to Apartment #5. That linked Rosas-Barrientos and the drug sale to Apartment #5, and it provided enough of a basis for the issuing judge to conclude that there was probable cause to search the unit.

Moreover, the search warrant depended on whether keys seized from Rosas-Barrientos or Serna-Rojo opened Apartment #5. As the R&R explains, "[t]he fact that the keys seized from Serna-Rojo ultimately opened the door to Apartment 5 gave additional supporting information so as to find probable cause existed for the execution of the search

9

warrant for Apartment 5 for narcotics." (R&R at 13.) Deputy Stenglein also concluded, based on his considerable experience working narcotics investigations, that Rosas-Barrientos and Serna-Rojo were part of a drug-trafficking organization in Minnesota that regularly uses residences not registered in its members' names to avoid being caught. And Deputy Stenglein attested that the organization commonly stores controlled substances, money, and other evidence in those residences. The totality of the evidence therefore supported a finding of probable cause to search Apartment #5.

### III. Triggering Condition for Anticipatory Warrant

"An anticipatory warrant is a warrant based upon an affidavit showing probable cause that at some future time (but not presently) certain evidence of crime will be located as a specific place." *United States v. Grubbs*, 547 U.S. 90, 94 (2006) (quotation marks and citation omitted). The "[o]ccurrence of the triggering condition establishes the requisite connection between the item described in the warrant and the searched location." *United States v. Brown*, 929 F.3d 1030, 1038 (8th Cir. 2019) (quotation marks and citation omitted). Here, the triggering condition was the finding of keys to Apartment #5 on Serna-Rojo. Rosas-Barrientos' third objection is that no evidence linked Serna-Rojo to Apartment #5 when the warrant was first issued, so the triggering condition itself was not supported by probable cause. Again, officers saw Rosas-Barrientos open the mailbox to Apartment #5 after he and Serna-Rojo returned to 29XX Bloomington Avenue from the controlled

sale. That created a substantial basis to believe that one of them would have keys to the unit. The Court overrules Rosas-Barrientos' third objection.

## IV.   *Leon* Good-Faith Exception

Rosas-Barrientos' final objection to the R&R is that it wrongly applied the *Leon* good-faith exception. "Searches pursuant to a warrant will rarely require any deep inquiry into reasonableness for a warrant issued by a magistrate normally suffices to establish that a law enforcement officer has acted in good faith in conducting the search." *Leon*, 468 U.S. at 922 (cleaned up, citations omitted). Accordingly, under the *Leon* good-faith exception, "the exclusionary rule should not be applied so as to bar the admission of 'evidence obtained by officers acting in reasonable reliance on a search warrant issued by a detached and neutral magistrate,' even if that search warrant is later held to be invalid." *United States v. Clay*, 646 F.3d 1124, 1127 (8th Cir. 2011) (citing *Leon*, 468 U.S. at 900, 922–23). The inquiry is "confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the [issuing judge's] authorization." *Id.* (citation omitted). Relevant here, if the affidavit were "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable," an officer would not manifest objective good faith by executing the warrant. *Leon*, 468 U.S. at 923 (citation omitted).

Even if Rosas-Barrientos is correct that the issuing judge wrongly approved the search warrant, it was not so lacking in probable cause to "render official belief in its

11

existence entirely unreasonable." *Id.* (citation omitted). As discussed, Deputy Stenglein attested that Rosas-Barrientos and Serna-Rojo returned to 29XX Bloomington Avenue after Serna-Rojo sold methamphetamine to an undercover officer, and then Rosas-Barrientos used a key to unlock the mailbox to Apartment #5. Officers saw Serna-Rojo leave and return to 29XX Bloomington Avenue after engaging in a second controlled drug sale. Before searching the apartment unit, officers found a key to Apartment #5 on Serna-Rojo. And Deputy Stenglein attested based on his experience that drug traffickers often keep controlled substances, drug-related money, and other evidence in their residences. Given those facts, a reasonably well-trained officer would not have known that a search of Apartment #5 was unconstitutional. The Court agrees with the R&R that the *Leon* exception applies. Rosas-Barrientos' objection is overruled.

## CONCLUSION

Based on the foregoing and on all the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1. Rosas-Barrientos' Objection (ECF No. 133) is OVERRULED;

2. The Report and Recommendation (ECF No. 114) is ACCEPTED; and

3. Rosas-Barrientos' Motion to Suppress Evidence Obtained as a Result of

Unlawful Search and Seizure (ECF No. 61) is DENIED.

Dated: May 22, 2023                                     BY THE COURT:

                                                        s/Nancy E. Brasel
                                                        Nancy E. Brasel
                                                        United States District Judge